**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEWIS TREE SERVICE, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>ALFREDO CERVANTES,<br><br>Defendant. | **COMPLAINT**<br><br>Civil Action No.: |

Plaintiff Lewis Tree Service, Inc. ("Lewis Tree"), by its attorneys, Harris Beach Murtha Cullina PLLC, as and for its Complaint against Defendant Alfredo Cervantes ("Cervantes"), sets forth and alleges as follows:

**NATURE OF THE ACTION**

1. Lewis Tree brings this action for injunctive relief, and in the alternative, monetary damages, and punitive damages, against its former employee Alfredo Cervantes for breaching his contractual obligations and duties to Lewis Tree, and his unlawful exploitation of Lewis Tree's proprietary and confidential information and trade secrets, promoting unfair competition, and improper solicitation of Lewis Tree's customers and employees.

2. Cervantes was a long-time leadership employee of Lewis Tree. Prior to joining Lewis Tree, his sole employment was with the U.S. Marine Corps. Since leaving Lewis Tree, his sole employment has been with United Clearing Services, LLC ("United Clearing"), previously a Lewis Tree vendor and now a Lewis Tree competitor in the same geographic area, recruiting the same craft and management workforce, and bidding for the same utility line clearing work with precisely the same customers as Lewis Tree. As such, Cervantes obtained all his training, knowledge, and business connections within the utility line clearance and vegetation management

industry from Lewis Tree. Now, he is currently exploiting the very training, knowledge, and business connections he obtained from Lewis Tree for his own personal gain as the sole principal of United Clearing.

3. Lewis Tree invested significant resources in guiding, training, and promoting Cervantes over the course of several years in multiple professional roles with progressively greater responsibility and exposure to Lewis Tree's confidential systems, trade secrets, employee information, and customer relationships.

4. Cervantes' career progression at Lewis Tree culminated in being named Division Manager of a significant business unit. Lewis Tree's multi-state business is divided at the highest level among five large Regions, with a combined geographic footprint spanning from the east coast to west Texas. Those large Regions are further divided throughout the eastern U.S. into approximately 18 operating Divisions. Individual Divisions typically contribute revenues to Lewis Tree of several million dollars to tens of millions of dollars, each.

5. Because Cervantes held the highest leadership role in one of those Divisions, Lewis Tree was required to entrust him with all the necessary knowledge, proprietary and confidential information, and trade secrets of Lewis Tree to facilitate his business and career success.

6. As a condition to being promoted into the Division Manager role, Cervantes entered into a Non-Disclosure and Leadership Loyalty agreement with Lewis Tree. The terms and conditions are incorporated by reference herein. That agreement is expressly governed by the laws of New York State, without regard to its conflicts of laws doctrines, and both parties irrevocably submitted in the agreement to the jurisdiction of the state and federal courts located in Monroe County, New York.

7. To help advance his career at Lewis Tree, the company also included Cervantes in its highly selective internal Emerging Leaders program. That program provided Cervantes with special and advanced training on a wide variety of business topics specific to bidding for and working with Lewis Tree's customers, managing Lewis employees, and succeeding as a senior leader in the Lewis business. Notwithstanding these efforts and investments by Lewis Tree to develop Cervantes' as a Lewis Tree business leader, he used the proprietary and confidential information he gained about Lewis Tree to form and co-own United Clearing, which is now a substantial competitor to Lewis Tree.

8. On information and belief, Cervantes created United Clearing even before his voluntary resignation from Lewis Tree. Although his spouse, now unfortunately deceased, was identified publicly as the principal owner of United Clearing, she had no personal experience or knowledge whatsoever of the utility line clearing or vegetation management industry when United Clearing was formed.

9. United Clearing initially offered subcontractor services to support Lewis Tree's field operations in the specific Lewis Tree Division where Cervantes was employed as Division Manager.

10. Cervantes himself signed the subcontract agreement between Lewis Tree and United Clearing *on behalf of Lewis Tree*, including service fees to be paid from Lewis Tree to United Clearing in excess of $644,000. Another individual, not his spouse, signed the subcontract on behalf of United Clearing. The subcontract expressly provides that its terms shall be construed and enforced in accordance with the laws of the State of New York, without regard to conflicts-of-laws doctrines, and the state and federal courts of Monroe County, New York, shall be the exclusive forum for any litigation arising out of the subcontract.

11. On information and belief, Cervantes is currently the sole officer of United Clearing.

12. As the sole officer of United Clearing, Cervantes is now actively engaged in recruiting members of Lewis Tree's leadership team in his former Division to leave Lewis Tree and join United Clearing. He was introduced to those Lewis Tree team members and learned of their skills and compensation through his leadership role at Lewis Tree.

13. As the sole officer of United Clearing, Cervantes is now actively engaged in meeting with Lewis Tree's key customers to solicit work and review work it has already unfairly obtained with Lewis Tree's confidential information. He was introduced to those Lewis Tree customers and learned of their contacts, preferences, priorities, and acceptable pricing through his leadership role at Lewis Tree.

14. Indeed, on August 20, 2025, Cervantes admitted in a face-to-face conversation with Lewis Tree's Chief Operating Officer, Dennis Brown, Jr., that Cervantes was meeting that day with a large and long-term Lewis Tree customer, Oncor Electric Delivery Company LLC ("Oncor"), to solicit and discuss vegetation management and utility line clearing work on behalf of United Clearing. Their unplanned conversation occurred in a public dining area of the Hilton Fort Worth hotel, which is located at 815 Main Street in Fort Worth, Texas, while Oncor's corporate offices are located one block northwest at 777 Main Street in Fort Worth, Texas. Mr. Brown was also attending a meeting with Oncor that day.

15. Further, Lewis Tree has in the past 60 days lost a significant number of its supervisory personnel to United Clearing – including nearly all of Lewis Tree's operational Supervisors in Cervantes' former Division, save one.

16. Further, Lewis Tree has been informed that Oncor has already awarded a significant contract to United Clearing that would otherwise have been available for bidding by Lewis Tree.

17. By this action, Lewis Tree seeks to prevent Cervantes from further acting in breach of contract with Lewis Tree and the consequential damages it has suffered as a result of his actions.

**THE PARTIES**

18. Plaintiff Lewis Tree is a corporation organized under the laws of the State of New York with its principal place of business located at 300 Lucius Gordon Drive, West Henrietta, New York, 14586.

19. Defendant Cervantes is an individual residing at 327 Forever RDG, Helotes, Texas 78023.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because Cervantes and Plaintiff are citizens of different States and the amount in controversy exceeds $75,000.00

21. This Court may exercise personal jurisdiction over Plaintiff because the cause of action arose from Plaintiff's regular transaction of business in New York and at all relevant times in question it maintained a corporate headquarters and principal place of business at 300 Lucius Gordon Drive, West Henrietta, New York, 14586. Plaintiff Lewis Tree is a corporation organized under the laws of the State of New York.

22. Defendant Cervantes is a former Division Manager and senior leadership employee of Lewis Tree, who voluntarily terminated his employment with Lewis Tree, and while employed by Lewis Tree created and founded the competitor of Lewis Tree, United Clearing.

23. In connection with his employment with Lewis Tree, Cervantes signed agreements in which, among other things, he consented to the jurisdiction and venue of the federal and state

courts located in Monroe County, New York and waived any objection to such jurisdiction. Section 10.4 of the Non-Disclosure and Leadership Loyalty Agreement between Lewis Tree and Cervantes confirms New York choice of law and venue. The terms and conditions are incorporated by reference herein.

24. Further, in connection with the work subcontracted by Lewis Tree to United Clearing, United Clearing signed agreements in which, among other things, consented to the jurisdiction and venue of the federal and state courts located in Monroe County, New York and waived any objection to such jurisdiction. Section 17(d) of the Subcontract Agreement between Lewis Tree and United Clearing confirms New York choice of law and venue. The terms and conditions are incorporated by reference herein.

25. Personal jurisdiction of this matter and the defendants is vested in this Court pursuant to the aforementioned employment agreements and pursuant to 28 U.S.C. § 1332(a)(1) as the parties' contractual venue provisions provide for resolution of any disputes in the State of New York at Monroe County.

26. Venue of this matter is properly in Monroe County pursuant to 28 U.S.C. § 1391(b) and (c)(2), as the parties' contractual venue provisions provide for resolution of any disputes in the State of New York at Monroe County.

## FACTUAL BACKGROUND

### LEWIS TREE'S BUSINESS

27. Lewis Tree provides utility line clearing and vegetation management services throughout the eastern U.S., with over 4,000 employees delivering skilled services in approximately 30 states. Lewis Tree serves both public and private entities, such as municipalities, electric cooperatives, and utilities. Lewis Tree maintains its headquarters in West Henrietta, New

York, has been in business since 1938, and is 100% employee-owned through its Employee Stock Ownership Plan. Because many of its employees who participate in the Employee Stock Ownership Plan are members of historically underrepresented or disadvantaged populations, Lewis Tree is also recognized as a socially and economically disadvantaged business.

28. Lewis Tree's services include general maintenance of the vegetation around critical infrastructure, tending to vegetation compromised by extreme weather, and vegetation clearance at utility sites and along utility rights of way.

29. It is customary in the vegetation management industry for service providers to obtain business through competitive bidding on specific vegetation management projects announced by public or private entities in need of such services.

30. Public entities, chiefly municipalities, in need of vegetation management services generally advertise publicly an open invitation for any and all responsible bidders to place bids for contracts on new projects.

31. Private entities, chiefly utilities, in need of vegetation management services generally extend *private* invitations to a select few vegetation management service providers to place bids for contracts on new projects.

32. Private entities in need of vegetation management services consider such factors as a service provider's reputation, the private entity's commercial history if any with the service provider, and the quality of any professional relationships between the key contact person(s) for the private entity and the key contact person(s) for the service provider, when deciding which service providers will receive invitations to bid on a new project. Absent such invitations, service providers have no public means to know of the prospective project and related bidding, inasmuch as the proposed projects are generally not advertised.

33. Lewis Tree expends significant effort and devotes substantial monetary resources to business development in order to foster strong professional relationships between Lewis Tree's senior managers and the key contact person(s) for Lewis Tree's private customers. Because Cervantes was a senior manager and under contractual obligations to maintain the confidentiality of and not misuse Lewis Tree's confidential information, Lewis Tree introduced him to its key customers, including Oncor.

34. Fostering strong professional relationships between Lewis Tree's senior managers and the key contact person(s) for Lewis Tree's private customers is necessary to ensure Lewis Tree receives opportunities to bid on projects from private customers.

35. During a bidding contest for a contract to service a private entity's vegetation management project, the private entity may invite a service provider to counter a competing service provider's lower bid.

36. Private entities in need of vegetation management services consider such factors as a service provider's reputation, the private entity's commercial history with the service provider, and the quality of any professional relationships between the key contact person(s) for the private entity and the key contact person(s) for the service provider, when deciding whether to invite a service provider to counter a competing service provider's lower bid.

37. Strong professional relationships between Lewis Tree's managers and the key contact person(s) for Lewis Tree's private customers are vital to Lewis Tree's maintenance of its goodwill, which is to say its reputation for responsiveness, competence, professionalism and being a responsible bidder, and are necessary to ensure that Lewis Tree will continue to receive invitations to counter the bids of other bidders.

38. Both public and private entities in need of vegetation management services generally award the contract to the lowest responsible bidder after the bidding contest has completed, but price alone need not be the determining factor in private bids.

39. Crafting a winning and profitable bid for a public or private contract to provide vegetation management services entails performing a complex analysis of many variables, and making estimates and predictions which require specialized knowledge and careful interpretation of sensitive data to make accurately.

40. Lewis Tree expends significant effort and devotes substantial monetary resources to hiring and training employees to be competent to perform the complex analyses and make the critical approximations and predictions necessary to craft a winning bid for a public or private contract to provide vegetation management services that will be both economical for the public or private customer and lucrative for Lewis Tree. Because Cervantes was a senior manager and under contractual obligations to maintain the confidentiality of and not misuse Lewis Tree's confidential information, Lewis Tree taught him how to successfully perform those analyses and formulate competitive bids for the work of its key customers, including Oncor.

41. Lewis Tree expends significant effort and devotes substantial monetary resources to developing and refining software and computer programs which guide and assist Lewis Tree's employees as they perform the complex analyses and make the critical approximations and predictions necessary to craft competitive bids for Lewis Tree.

42. Lewis Tree has developed and continually refines the software and computer programs Lewis Tree utilizes to formulate its bids. The software and computer programs Lewis Tree utilizes are proprietary, customized, and not commercially available.

43. Those employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are given access to Lewis Tree's special software and computer programs. Because Cervantes was a senior manager and under contractual obligations to maintain the confidentiality of and not misuse Lewis Tree's confidential information, Lewis Tree introduced him to this proprietary bidding software.

44. Additionally, those limited employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are given access to Lewis Tree's trade secrets, data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphs, drawings, inventions and ideas, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, historical financial statements of Lewis Tree, financial projections and budgets of Lewis Tree, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training techniques and materials, and notes, analyses, compilations, studies, and summaries of economic, environmental, meteorological, transportation, and demographic features of sales territories, all of which are critical to Lewis Tree's competitive success. Because Cervantes was a senior manager and under contractual obligations to maintain the confidentiality of and not misuse Lewis Tree's confidential information, Lewis Tree provided him with access to this highly confidential and proprietary information and trade secrets of Lewis Tree.

45. Lewis Tree expends significant effort and devotes substantial monetary resources to creating, developing, maintaining, and protecting the secrecy of the proprietary and confidential information above.

46. Lewis Tree operates in a highly competitive industry, and therefore Lewis Tree's software and computer programs, trade secrets, the proprietary and confidential information

enumerated above, and the goodwill Lewis Tree has established with public and private entities through considerable expense, are of great competitive significance.

47. Those employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are required to sign employment agreements committing them to refrain from disclosing Lewis Tree's software and computer programs, trade secrets, and other proprietary and confidential information in order to protect Lewis Tree from unfair competition arising from unauthorized disclosure of sensitive information which Lewis Tree expended effort and resources to develop.

48. Those employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are required to sign agreements committing them to refrain from competing with Lewis Tree in order to protect Lewis Tree from unfair competition arising from the employee's unauthorized exploitation of sensitive information, or of professional relationships with key customer contact persons, which Lewis Tree expended effort and resources to develop.

49. Those employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are required to sign agreements committing them to refrain from soliciting Lewis Tree's customers in order to protect Lewis Tree from unfair competition arising from unauthorized exploitation of professional relationships with key customer contact persons which Lewis Tree expended effort and resources to develop.

50. Those employees of Lewis Tree responsible for formulating Lewis Tree's bid proposals are required to sign agreements committing them to refrain from soliciting Lewis Tree's employees in order to protect Lewis Tree from unfair competition arising from the employee's inducement of another employee's unauthorized exploitation of sensitive information, or of

professional relationships with key customer contact persons, which Lewis Tree expended effort and resources to develop.

**DEFENDANT ALFREDO CERVANTES**

51. In April of 2014, Cervantes received an offer letter from Lewis Tree for the role of Area Manager. Upon accepting this role, Lewis Tree and Cervantes executed a Non-Disclosure and Work for Hire Agreement, dated April 25, 2014. Cervantes began working for Lewis Tree on June 9, 2014. The terms of that agreement are incorporated by reference herein.

52. On or about April 8, 2016, Cervantes submitted an Employment Application to Lewis Tree for a management position. His Employment Application lists as his complete employment history only his prior employment with Lewis Tree as an Area Manager and his service as an Operations Officer in the U.S. Marine Corps. Cervantes signed his Employment Application beneath a statement certifying that all answers given are true.

53. Subsequently, in April of 2016, Cervantes was promoted to the role of Regional Safety Supervisor. Lewis Tree and Cervantes signed a Non-Disclosure and Work for Hire Agreement, dated April 10, 2016. Cervantes began working under the role of Regional Safety Supervisor on April 18, 2016. The terms of that agreement are incorporated by reference herein.

54. On or about December 22, 2017, Lewis Tree offered Cervantes employment as a Division Manager. The offer was expressly contingent on Cervantes' acceptance of Lewis Tree's Non-Disclosure and Leadership Loyalty Agreement. Cervantes accepted Lewis Tree's offer and was subsequently promoted to the role of Division Manager, a senior management position.

55. On December 31, 2017, Lewis Tree and Cervantes executed a Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree. The terms of that agreement are incorporated by reference herein.

56. On January 2, 2018, Cervantes began working under the role of Division Manager at Lewis Tree, and was a member of Lewis Tree's Emerging Leaders program.

57. As part of Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree, Cervantes agreed that during his employment with Lewis Tree and following his termination or resignation from Lewis Tree for any reason, he would refrain from disclosing Lewis Tree's trade secrets and other proprietary and confidential information until such information has become public knowledge.

58. As part of Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree, Cervantes agreed that during his employment with Lewis Tree and for the one-year period following his termination or resignation from Lewis Tree for any reason, he would refrain from competing with Lewis Tree.

59. As part of Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree, Cervantes agreed that during his employment with Lewis Tree and for the two-year period following his termination or resignation from Lewis Tree for any reason, he would refrain from soliciting Lewis Tree's customers to discontinue their business relations with Lewis Tree.

60. As part of Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree, Cervantes agreed that during his employment with Lewis Tree and for the two-year period following his termination or resignation from Lewis Tree for any reason, he would refrain from soliciting Lewis Tree's employees to discontinue their professional association with Lewis Tree.

61. In partial return for Cervantes' commitments not to disclose Lewis Tree's proprietary information and for his one to two-year long post-employment commitments not to compete with Lewis Tree, not to solicit Lewis Tree customers and not to solicit Lewis Tree

employees, Lewis Tree contractually obligated itself to pay continued salary to Cervantes at $85,500.00/$41.11 per hour, payable on a weekly basis, and Cervantes was eligible to participate at the Division Manager level in the Operations Bonus Program, along with other benefits afforded to him based on the acceptance of the position and Non-Disclosure and Leadership Loyalty Agreement.

62. In his Division Manager role at Lewis Tree, Cervantes was responsible for, among other things, contributing to and formulating Lewis Tree's bid proposals.

63. Cervantes was given access to and regularly utilized Lewis Tree's confidential information to perform his duty of formulating Lewis Tree's bid proposals. Cervantes also supervised and instructed Lewis Tree personnel on effectively using Lewis Tree's proprietary methods and tools for formulating bid proposals.

64. Cervantes was also given access to and regularly utilized Lewis Tree's trade secrets, data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphs, drawings, inventions and ideas, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, historical financial statements of Lewis Tree, financial projections and budgets of Lewis Tree, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training techniques and materials, and notes, analyses, compilations, studies, and summaries of economic, environmental, meteorological, transportation, and demographic features of sales territories, to perform his duty of formulating Lewis Tree's bid proposals.

65. Lewis Tree loaned a cell phone, a laptop computer, and other personal property to Cervantes to help him perform all his responsibilities. Cervantes consistently utilized the cell

phone, laptop computer, and other personal property issued to him by Lewis Tree to conduct business on behalf of Lewis Tree.

66. Cervantes resigned from Lewis Tree on April 7, 2023.

67. Upon information and belief, prior to resigning, and without Lewis Tree's knowledge, Cervantes disclosed Lewis Tree's special software, computer programs, trade secrets and other proprietary and confidential information to agents of United Clearing, competed with Lewis Tree, solicited Lewis Tree's customers to discontinue their business relations with Lewis Tree, and solicited Lewis Tree's employees to discontinue their professional association with Lewis Tree, all without Lewis Tree's authorization. Upon information and belief, the full scope of Cervantes' breaches of his duties to Lewis Tree in the interval before his termination of his employment is yet to be uncovered.

68. In accordance with the provisions of the agreement between Cervantes and Lewis Tree, and based upon its understanding that Cervantes was observing the restraints in such agreement, Lewis Tree has continued to pay Cervantes his standard salary during the time of his employment until his resignation. Lewis Tree had no suspicion as to Cervantes' involvement in any schemes to unfairly compete, misappropriate, solicit customers or employees, or breach loyalty or contract against Lewis Tree prior to his resignation.

## DEFENDANT CERVANTES' INVOLVEMENT WITH UNITED CLEARING

69. Cervantes began forming United Clearing with another Senior Supervisor of Lewis Tree, Ricardo Garcia ("Garcia"), during or prior to 2021. Cervantes and Garcia were both employed by Lewis Tree at the time they formed United Clearing.

70. Upon information and belief, Garcia and Cervantes started this joint venture under the name of Cervates' wife, Monica B. Cervantes, to avoid suspicion and began this line clearing company using the resources and funds from Lewis Tree.

71. Upon information and belief, Monica B. Cervantes had no experience, training, or customer contacts whatsoever in the utility line clearing or vegetation management industry when United Clearing was formed. Upon information and belief, prior to Cervantes co-founding United Clearing, United Clearing had little or no capacity to compete in the vegetation management industry.

72. Upon information and belief, Cervantes utilized Lewis Tree's equipment to perform the work subcontracted to United Clearing.

73. Upon information and belief, Cervantes and United Clearing used Lewis Tree's employees and service crews to perform work for United Clearing via the guise of a subcontractor agreement.

74. Upon information and belief, Monica B. Cervantes experienced poor health until her passing during April 2025.

75. Upon information and belief, Cervantes is currently the sole officer of United Clearing.

76. Upon information, in his role at United Clearing, Cervantes solicited and continues to solicit Lewis Tree's employees to discontinue their professional association with Lewis Tree. Cervantes' solicitations are without authorization from Lewis Tree and in derogation of the post-employment contractual commitments with Lewis Tree. Upon information and belief, several of the Lewis Tree employees have begun working with United Clearing but remain on the Lewis Tree payroll. Upon information and belief, the full scope of these solicitations is yet to be uncovered.

77. Upon information and belief, in his role at United Clearing, Cervantes disclosed and continues to disclose Lewis Tree's special software, computer programs, trade secrets and other proprietary and confidential information, to agents of United Clearing in order to improve United Clearing's competitiveness in the market for vegetation management services. These disclosures are without authorization from Lewis Tree. Upon information and belief, the full scope of these disclosures is yet to be uncovered.

78. Upon information and belief, in his role at United Clearing, Cervantes is engaged in efforts to assist United Clearing in competing with Lewis Tree. Cervantes is engaging in such actions without authorization from Lewis Tree and in derogation of the contractual commitments he made not to do so for a period of one year following his departure from employment with Lewis Tree. Upon information and belief, the full scope of Cervantes' competition is yet to be uncovered.

79. Upon information and belief, in his role at United Clearing, Cervantes continued to solicit, and is soliciting, Lewis Tree's customers to discontinue their business relations with Lewis Tree and is seeking to exploit good will he developed with entities at Lewis Tree's expense to gain a bid opportunities for United Clearing and to secure contracts for United Clearing. Cervantes' solicitations are without authorization from Lewis Tree and in derogation of the post-employment contractual commitments with Lewis Tree. Upon information and belief, the full scope of Cervantes' solicitations is yet to be uncovered.

80. At approximately 7:15 AM Central Time on August 20, 2025, Lewis Tree's Chief Operating Officer, Dennis Brown, Jr., encountered Cervantes in the public restaurant area of the Hilton Fort Worth hotel, located at 815 Main Street in Fort Worth, Texas. The encounter was unplanned and unexpected by Mr. Brown. The hotel is located one block from the corporate

offices of a large and long-time Lewis Tree customer, Oncor Electric Delivery Company LLC ("Oncor").

81. During that encounter, Cervantes admitted to Mr. Brown that Cervantes was scheduled to meet that day with Oncor representatives on behalf of United Clearing. Mr. Brown was also scheduled to meet that day with the same Oncor representatives on behalf of Lewis Tree.

82. As it is clear that Cervantes has violated his legal obligations to Lewis Tree, Lewis Tree brings this action to account for his prior and ongoing misconduct, and to prevent additional harm.

## FIRST CAUSE OF ACTION
***Breach of Contract against Cervantes***
***(Non-disclosure Provision)***

83. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "82" with the same force and effect as if fully set forth herein.

84. Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree are valid and binding written contracts, made for valid consideration and governed by New York law.

85. Lewis Tree performed all its obligations under its Non-Disclosure and Leadership Loyalty Agreement with Cervantes, including without limitation, payment of salary.

86. By misappropriating, using and/or disclosing Lewis Tree's confidential and proprietary information and trade secrets, Cervantes has materially breached the non-disclosure provision contained in his Non-Disclosure and Leadership Loyalty Agreement, and Lewis Tree will suffer irreparable injury if such future conduct is not rectified.

87. Cervantes' prior breaches entitle Lewis Tree to an award of damages in an amount to be proven at trial.

88. Moreover, unless Cervantes is compelled to honor and specifically perform his contractual obligations to Lewis Tree, Lewis Tree will suffer substantial and irreparable injury to its ongoing business operations.

**<u>SECOND CAUSE OF ACTION</u>**
***Breach of Contract against Cervantes***
***(Non-competition Provision)***

89. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "88" with the same force and effect as if fully set forth herein.

90. Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree are valid and binding written contracts, made for valid consideration and governed by New York law.

91. Lewis Tree performed all its obligations under its Non-Disclosure and Leadership Loyalty Agreement with Cervantes, including without limitation, payment of salary.

92. Cervantes has unjustifiably and inexcusably breached the non-competition provision contained in his Non-Disclosure and Leadership Loyalty Agreement by competing against Lewis Tree prior to his departure from Lewis Tree and within the one-year period immediately following his departure from Lewis Tree.

93. Lewis Tree has been damaged because of Cervantes' breach of the non-competition provision contained in his Non-Disclosure and Leadership Loyalty Agreement, and will suffer irreparable injury if subjected to further such breaches.

94. Specifically, unless Cervantes is compelled to honor and specifically perform his contractual obligations to Lewis Tree, Lewis Tree will suffer substantial and irreparable injury to its ongoing business operations.

**THIRD CAUSE OF ACTION**
***Breach of Contract against Cervantes***
***(Non-Solicitation of Customers Provision)***

95. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "94" with the same force and effect as if fully set forth herein.

96. Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree are valid and binding written contracts, made for valid consideration and governed by New York law.

97. Lewis Tree performed all its obligations under its Non-Disclosure and Leadership Loyalty Agreement with Cervantes, including without limitation, payment of salary.

98. Cervantes has unjustifiably and inexcusably breached the non-solicitation of customers provision contained in his Non-Disclosure and Leadership Loyalty Agreement by soliciting Lewis Tree customers prior to his departure from Lewis Tree and within the two-year period immediately following his departure from Lewis Tree.

99. Lewis Tree has been damaged because of Cervantes' breach of the non-solicitation of customers provision contained in his Non-Disclosure and Leadership Loyalty Agreement, and will suffer irreparable injury if subjected to further such breaches.

100. Specifically, unless Cervantes is compelled to honor and specifically perform his contractual obligations to Lewis Tree, Lewis Tree will suffer substantial and irreparable injury to its ongoing business operations.

**FOURTH CAUSE OF ACTION**
***Breach of Contract against Cervantes***
***(Non-solicitation of Employees Provision)***

101. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "100" with the same force and effect as if fully set forth herein.

102. Cervantes' Non-Disclosure and Leadership Loyalty Agreement with Lewis Tree are valid and binding written contracts, made for valid consideration and governed by New York law.

103. Lewis Tree performed all its obligations under its Non-Disclosure and Leadership Loyalty Agreement with Cervantes, including without limitation, payment of salary.

104. Cervantes has unjustifiably and inexcusably breached the non-solicitation of employees provision contained in his Non-Disclosure and Leadership Loyalty Agreement by soliciting Lewis Tree employees prior to his departure from Lewis Tree and within the two-year period immediately following his departure from Lewis Tree.

105. Lewis Tree has been damaged because of Cervantes' breach of the non-solicitation of employees provision contained in his Non-Disclosure and Leadership Loyalty Agreement, and will suffer irreparable injury if subjected to further such breaches.

106. Specifically, unless Cervantes is compelled to honor and specifically perform his contractual obligations to Lewis Tree, Lewis Tree will suffer substantial and irreparable injury to its ongoing business operations.

## FIFTH CAUSE OF ACTION
***Misappropriation of Trade Secrets against Cervantes***

107. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "106" with the same force and effect as if fully set forth herein.

108. Several categories of Lewis Tree's confidential information constitute protectable trade secrets, including, among other things, the code for Lewis Tree's special software and computer programs, other related data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphs, drawings, inventions and ideas, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, historical financial

statements of Lewis Tree, financial projections and budgets of Lewis Tree, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training techniques and materials, and notes, analyses, compilations, studies, and summaries of economic, environmental, meteorological, transportation, and demographic features of sales territories

109. Lewis Tree's other trade secrets include the marketing strategies used by Lewis Tree to determine which customer projects and requests-for-proposals to prioritize, detailed employee and sales information revealing Lewis Tree's highest performing employees and their compensation, and detailed information about customers' purchase histories, proposal preferences, and business development affinities.

110. Lewis Tree has made efforts to safeguard the confidentiality of its trade secrets, including by limiting access to such information within the company and having its key employees enter into confidentiality agreements.

111. Lewis Tree spent significant time and expense to develop these trade secrets.

112. Cervantes has knowingly misappropriated Lewis Tree's confidential and proprietary information and trade secrets, has used and disclosed and/or will inevitably use and disclose, and, absent injunctive relief, will continue to use and disclose the same without Lewis Tree's consent or authorization, to the competitive disadvantage of Lewis Tree.

113. Lewis Tree lacks an adequate remedy at law and will suffer irreparable harm unless a permanent injunction is issued enjoining Cervantes from further misappropriation, disclosure, use or exploitation of Lewis Tree's trade secrets.

114. Additionally, and as a matter of alternative pleading, Lewis Tree has been injured by Cervantes' actions and is entitled to damages in an amount to be proven at trial.

115. Moreover, Lewis Tree is entitled to an award of punitive damages because Cervantes engaged in intentional or deliberate wrongdoing, and committed conscious acts that willfully and wantonly disregarded the rights of Lewis Tree.

## SIXTH CAUSE OF ACTION
***Breach of Fiduciary Duty of Loyalty against Cervantes***

116. Lewis Tree repeats and realleges each of the allegations contained in paragraphs "1" through "115" with the same force and effect as if fully set forth herein.

117. At all times during their employment by Lewis Tree, Cervantes was a fiduciary of Lewis Tree as a holder of a senior management position at Lewis Tree.

118. At all times during their employment by Lewis Tree, Cervantes owed a duty of loyalty to maintain the confidentiality of Lewis Tree's confidential and proprietary information and trade secrets, refrain from competing against Lewis Tree, refrain from soliciting Lewis Tree's customers to discontinue their business relations with Lewis Tree, and refrain from soliciting Lewis Tree's employees to discontinue their professional association with Lewis Tree.

119. Cervantes owed a continuing duty of loyalty to Lewis Tree not to use or disclose Lewis Tree's confidential and proprietary information and trade secrets.

120. By misappropriating, using and/or disclosing such information to third parties without Lewis Tree's authorization during and after his employment with Lewis Tree, Cervantes has breached and will continue to breach his duty of loyalty to Lewis Tree.

121. By competing against Lewis Tree during his employment with Lewis Tree, Cervantes has breached and will continue to breach his duty of loyalty to Lewis Tree.

122. By soliciting Lewis Tree's customers to discontinue their business relations with Lewis Tree during his employment with Lewis Tree, Cervantes has breached and will continue to breach his duty of loyalty to Lewis Tree.

123. By soliciting Lewis Tree's employees to discontinue their professional associations with Lewis Tree during their employment with Lewis Tree, Cervantes has breached and will continue to breach his duty of loyalty to Lewis Tree.

124. Lewis Tree lacks an adequate remedy at law and will suffer irreparable harm unless a permanent injunction is issued enjoining Cervantes from committing any further breaches of his duty of loyalty.

125. Additionally, and as a matter of alternative pleading, Lewis Tree has been injured by Cervantes' actions and is entitled to damages in an amount to be proven at trial, including compensation Lewis Tree paid Cervantes' during their period of disloyalty, for which Lewis Tree is entitled to reimbursement under the "faithless servant doctrine."

126. Moreover, Lewis Tree is entitled to an award of punitive damages because Cervantes engaged in intentional or deliberate wrongdoing, and committed conscious acts that willfully and wantonly disregarded the rights of Lewis Tree.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lewis Tree Service, Inc. demands judgment in its favor granting the following relief:

(A) On Plaintiff's first cause of action, preliminary and permanent injunctive relief compelling Defendant Cervantes to honor his contractual obligations to Lewis Tree and prohibiting him from disclosing Lewis Tree's trade secrets and other proprietary and confidential information, both during the pendency of this action and thereafter for an appropriate period, as well as monetary damages associated with all prior misconduct committed by Cervantes;

(B) On Plaintiff's second cause of action, a preliminary and permanent injunction compelling Defendant Cervantes to honor his contractual obligations to Lewis Tree and

prohibiting him from competing with Lewis Tree, both during the pendency of this action and thereafter for an appropriate period, as well as monetary damages associated with all prior misconduct committed by Cervantes;

(C) On Plaintiff's third cause of action, a preliminary and permanent injunction compelling Defendant Cervantes to honor his contractual obligations to Lewis Tree and prohibiting him from soliciting Lewis customers, both during the pendency of this action and thereafter for an appropriate period, as well as monetary damages associated with all prior misconduct committed by Cervantes;

(D) On Plaintiff's fourth cause of action, a preliminary and permanent injunction compelling Defendant Cervantes to honor his contractual obligations to Lewis Tree and prohibiting him from soliciting Lewis Tree's employees, both during the pendency of this action and thereafter for an appropriate period, as well as monetary damages associated with all prior misconduct committed by Cervantes;

(E) On Plaintiff's fifth cause of action, preliminary and permanent injunctive relief compelling Cervantes to refrain from misappropriating Lewis Tree's trade secrets, and/or in the alternative, monetary damages, including punitive damages, in an amount to be determined at trial, as well as monetary damages associated with all prior misconduct committed by Cervantes;

(F) On Plaintiff's sixth cause of action, preliminary and permanent injunctive relief compelling Cervantes to refrain from further breaches of his duty of loyalty to Lewis Tree, as well as monetary damages associated with all prior misconduct committed by Cervantes, including damages under the "faithless servant doctrine," and also including punitive damages, in an amount to be determined at trial;

(G) Plaintiff's reasonable attorney's fees and costs and disbursements, with interest; and further

(H) Such other and further relief as the Court deems just and proper.

Dated: August 25, 2025
Pittsford, New York

**HARRIS BEACH MURTHA CULLINA PLLC**

James P. Nonkes, Esq.
*Attorneys for Plaintiff Lewis Tree Service, Inc.*
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8611
jnonkes@harrisbeachmurtha.com